CASE No. 988.

TALMADGE v. OLIVER.

1. Where there is a conditional sale of personal property, the vendor retaining title until paid, the right of property continues in the vendor, except that since the act of 1843, (11 *Stat.* 256, § 3; *Gen. Stat., ch. XCVIII.,* § 6,) such a reservation, when verbal, is void.
2. Such conditional sale, reduced to writing, held in this case to be an equitable mortgage; and although not recorded, is of prior claim to a subsequent recorded mortgage, where action for recovery of the property is brought by the vendor against the second mortgagee within the time allowed by law for recording.

Before WALLACE, J., Spartanburg, March, 1880.

Action commenced in trial justice's court by F. P. Talmadge against J. H. Oliver, to recover a horse. The case is fully stated in the opinion of this court.

*Mr. J. S. R. Thomson,* for appellant.

*Mr. C. P. Wofford,* contra.

March 8th, 1881.   The opinion of the court was delivered by
SIMPSON, C. J.   In this case an action was originally brought by the appellant in the trial justice's court to recover a horse from respondent.

· Appellant had been the owner of the horse, and, on December 13th, 1879, he placed the horse in the possession of one J. C. Foster, under the following written agreement: ʼ

"Received this day of F. P. Talmadge one horse, for which I am to board said F. P. Talmadge and wife from 1st January, 1880, until 15th March, 1880. The horse to remain the property of F. P. Talmadge until this contract is satisfied."

Appellant boarded with Foster only two weeks, when Foster absconded. At the time Foster left he was indebted to the re-

spondent some $265; and about the time he left he borrowed from respondent $35, his indebtedness then being $300. For this sum, on January 8th, he gave respondent a note secured by mortgage. In the preparation of the mortgage the horse was not at first embraced, but respondent insisted that the horse should be embraced, and he testified that he would not have lent the additional $35 but for the fact that the horse was to be embraced in the mortgage. He had no knowledge of the written agreement referred to.

The mortgage was recorded on the day of its execution. The condition was that upon default of payment respondent should take possession and hold to his own use or sell, refunding the overplus, if any, to Foster. Foster made default, and respondent took possession of the mortgaged property and duly advertised it for sale, including the horse in question.

This action was then brought by appellant to recover the horse.

The remainder of the mortgaged property was duly sold and bought in principally by respondent. The sale, however, failed to realize a sum sufficient to pay respondent's debt at the prices paid. Appellant claimed that respondent bought the property below its real value, and that a re-sale, at its value, would more than pay respondent his full debt.

Upon these facts the trial justice decreed for the appellant and $20 damages, that sum having been fixed by agreement of parties, with costs.

Respondent appealed to the Circuit Court. Judge Wallace presiding, heard the appeal upon written testimony, in substance, as above. Judge Wallace sustained the appeal of respondent, "holding that no conditional sale by which title is reserved to the vendor, either by verbal or written agreement, could be made which would be good against a subsequent purchaser or mortgagee for valuable consideration without notice," "and that in this case the mortgage of Foster conveyed a title to respondent superior to that of appellant under reservation of title held by him."

From the order sustaining the appeal below, the appellant plaintiff has appealed to this court, and the main question pre-

sented here is as to the superiority of title of appellant and re-
spondent.

It is admitted that appellant originally owned the horse in
question. Has he parted with title? And if not, has he done
any act which estops him from enforcing his title as against the
claim of respondent? The intent of parties must always govern
in contracts when it can be legally ascertained. This is so at
least between the parties themselves. This is a fundamental
rule, from which there can be no departure. Guided by this
rule it is perfectly clear that as between appellant and Foster the
title to this horse never passed from the appellant. There is no
room for doubt as to this point, because it is expressly stipulated
in the agreement that the horse should remain the property of
appellant until the contract of board was satisfied. This con-
tract has never been satisfied, certainly not in whole, and
scarcely in part. If this suit, then, had been between appel-
lant and Foster the result could not have been doubtful.

Conditional sales of personal property, either with verbal or
written reservation of title by the vendor, have often been recog-
nized, both in the English and American decisions. *Bishop* v.
*Shellito*, 2 *Barn. & Ald.* 528, n. A voluntary and absolute de-
livery, under contract of sale, vests the title, but if, says Chan-
cellor Kent, "the delivery be accompanied with a declaration on
the part of the seller that he should not consider the goods as
sold until security be given, the sale is conditional and the prop-
erty does not pass by delivery as between the parties." Citing
4 *Mass.* 405; 17 *Mass.* 606, "Where there is a condition prece-
dent attached to a contract of sale," he adds, "the property does
not vest in the vendee on delivery until he performs the condi-
tion, or the seller waives it, and the right continues in the vendor
even against the creditors of the vendee." *Barrett* v. *Pritchard*,
2 *Pick.* 512. This principle is endorsed by Chitty, Story and
Parsons. See *Chitty* (11*th ed.*) 588, and the cases there cited.

In our own state four cases, beginning with the case of Dupree
v. Harrington, all decided before the act of 1843—hereafter to
be considered—full to the point of the validity of a *verbal* reser-
vation of title, although the property was delivered, are found.

*Dupree* v. *Harrington, Harp.* 391 ; *Reeves* v. *Harris,* and *Bailey* v. *Jennings,* 1 *Bail.* 563 ; *Bennett* v. *Sims, Rice* 422.

It seems to have been admitted in the argument of these cases that a written reservation was beyond question. The doubt appeared to be as to verbal reservations, and Judge Earle, in Bennett *v.* Sims, said : " If there be no difference in principle between a condition in writing and a verbal one, and I have tortured my faculties to conceive a ground of difference, except as to the mode of proof, then the case of Dupree *v.* Harrington is direct authority." The reservation in Dupree *v.* Harrington was in writing.

In the case of Bennett *v.* Sims, Judge Earle, delivering the opinion of the court, discussed the question how far a verbal reservation would be good against subsequent creditors, and the question, both as to subsequent creditors and purchasers, was reserved. The inclination of Judge Earle's mind evidently was to hold that such verbal stipulations would be good against subsequent creditors without notice, unless the transaction was impeached by showing some badges of unfairness, such as long-continued possession by the vendee, &c., giving rise to a presumption of gift or absolute transfer. In this unsettled state of that question the act of 1843 was passed. This was an act to amend the law in relation to recording mortgages, and the third section provides " that as to subsequent creditors and purchasers for valuable consideration without notice, where the vendor of personal property who has parted with the possession, reserves to himself any interest by verbal agreement in the same, such reservation shall be void." This, as was said by Judge Wardlaw in *Cochran* v. *Roundtree,* 3 *Strob.* 222, was a legislative declaration of an unsettled point of law, *i. e.,* the effect of verbal reservations as to subsequent creditors and purchasers, and this act settled that question ; but the act, it will be observed, is silent as to written reservations.

This certainly could not have been accidental, nor can we believe, as was most ingeniously and forcibly argued by Mr. Wofford, respondent's counsel, that the term *verbal* includes both spoken and written reservations. The distinction between the two is wide, and was, no doubt, well understood, and the pur-

pose of the act must have been to destroy the one and leave the other standing.

The case of *Cochran* v. *Roundtree, supra,* was a case involving a verbal condition. The sale in question was made before the passage of the act of 1843, but the case was heard and decided afterwards. There was a question of fact in the case, whether or not the sale was absolute or conditional, and there was some doubt as to the finding of the jury on this question. The presiding judge, however, charged the jury that even assuming that the sale was conditional, yet if Cochran was a subsequent *bona fide* purchaser without notice, he was protected.

The appeal involved the correctness of this charge, and the court understood the charge to be that, *per se*, as matter of law such a condition before the act of 1843 was void as to subsequent purchasers without notice. And, so understanding, the court sustained the charge, saying that they were unwilling to go beyond the case of Bennett *v.* Sims. And, stopping where that case stopped, the court declared that although the condition was binding upon Williams it did not bind a subsequent purchaser without notice. This case, however, as has been said, involved a verbal condition, and it was decided after the legislative will in the act of 1843 as to such conditions had been declared. How far that act may have influenced the judgment of the court, we do not know. Before the passage of the act, as will be seen in the case of Bennett *v.* Sims, the mind of an eminent judge, Judge Earle, was altogether the other way. But neither this case nor the act of 1843 touched written reservations. Conditional sales and delivery of property with such reservations remain as before ; each case to turn somewhat upon its own facts. There is a reason for this. Written stipulations are more easily proved—more specific and certain, and more carefully made—and they usually amount to a mortgage, and to hold them *per se* void as to subsequent creditors, as was held in Cochran *v.* Roundtree, and as the act of 1843 declares as to verbal reservations, would be going beyond the previous decisions.

In the case now before the court, the written agreement by which the appellant hoped to protect himself when he delivered the horse to Foster, was dated December 13th, 1879. On Jan-

uary 8th, 1880, respondent, already holding claims against Foster, advanced to him an additional sum of $35, took mortgage embracing the horse of appellant, and in a few days thereafter the horse was advertised for sale under this mortgage to pay Foster's debt.

On January. 15th the suit was commenced before the trial justice. If the doctrine be sound that no conditional sale of personal property, whether by verbal or written agreement, by which title is reserved to the vendor could be made, which would be good against a subsequent purchaser without notice, then great injustice would be done here in this hasty proceeding.

Written reservations having been left untouched by the act of 1843, cannot be regarded as void *per se*, even as to subsequent creditors and purchasers. They are certainly good between the parties, and unless some equitable or legal estoppel can be interposed to vitiate the contract, they should be good as to others. In this case the respondent seems to have been without notice; but the appellant in no way contributed to his want of knowledge. Foster had not been long in possession—but a few weeks. The parties all lived in the same village. There must have been circumstances occurring calculated to put the respondent on the inquiry. But, at all events, as to this case the agreement held by the appellant may be regarded as an equitable mortgage. It had all the elements of a mortgage; it was to secure a contract; the property was designated and the title reserved to insure the performance of this contract, and it is prior in date to respondent's mortgage. True, it was not recorded, and, being without a witness, there might have been some difficulty in having it recorded; but the action was commenced within the time allowed for recording, so that respondent had actual notice within this time. This was sufficient and supplied the place of recording.

We do not think that appellant has any cause of complaint because respondent bought the mortgaged property below its value. Nor is there any room here for an accounting by respondent. The question here is as to the title to the horse. In that the appellant has the superior claim under the facts of the case, and having done nothing to forfeit this title or to estop him

from enforcing his rights, the horse should have been adjudged to him.

The order below is reversed and the appeal sustained.    Let the case be remanded.

McIVER and McGOWAN, A. J.'s, concurred.